956 F.2d 1163
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SCOTT MANAGEMENT, INCORPORATED, Plaintiff-Appellee,
v.
COMMERCE AND INDUSTRY INSURANCE COMPANY, Defendant-Appellant.
 No. 91-2549.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 2, 1991.
Decided March 3, 1992.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CA-90-1358-A)
 Argued: Benny Morris Martin, McKenzie, Martin, Taylor & McConnaughey, Atlanta, Ga., for appellant; M. Michael Cramer, Cramer & Klopman, Chartered, Rockville, Md., for appellee.
 On Brief: Benjamin A. Klopman, Cramer & Klopman, Chartered, Rockville, Md., Jerome P. Friedlander, II, Friedlander & Friedlander, Arlington, Va., for appellee.
 E.D.Va.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before PHILLIPS, MURNAGHAN and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Commerce and Industry Insurance Company appeals an order of the district court finding in favor of Scott Management, Incorporated on its claim seeking recovery under a commercial property insurance contract for vandalism of forty-one apartment units, vandalism and theft of leased furniture in those apartment units, and loss of rental value during the period of repair of the units. We affirm in part, vacate in part, and remand.
 
 I.
 
 2
 From April 1989 through September 1989, Scott Management leased to the Culinary School of Washington forty-five* furnished apartment units at the Meadow Woods Apartments complex to be used as residences for its students. Almost immediately after taking possession of the apartment units, the Culinary School became delinquent in its rental payments. In October 1989 a notice to quit was served on the Culinary School but was rescinded when the rental payments were made current. Subsequently, it was reissued a month later when the rental payments again became past due.
 
 
 3
 The inability of the Culinary School to meet its financial obligations continued and, in January 1990, it filed for protection under Chapter 11 of the United States Bankruptcy Code. On January 22, 1990 Scott Management obtained relief from the automatic stay and was granted a writ of possession for forty-one apartment units. After Scott Management evicted the students, it discovered that many of the individual apartment units had been extensively damaged and the furnishings damaged or sold.
 
 
 4
 As result of these losses, Scott Management submitted a claim to Commerce and Industry on its property insurance contract for damage to the apartment units, theft of and damage to the furnishings, and loss of rents. At trial Scott Management sought a total recovery of $151,349 under the insurance contract. This amount included a stipulation by Commerce and Industry that the total damage to the apartment units and furnishings was $64,563, a claim for $2,000 for security services incurred in evicting the students, and a claim for $84,786 for loss of rental value. At the conclusion of a bench trial, the district court found in favor of Scott Management on all claims except the $2,000 claim sought for security services.
 
 II.
 
 5
 Commerce and Industry contends that the district court erred in entering judgment in favor of Scott Management on its claim for loss of rental value because Scott Management failed to introduce any historical evidence of occupancy rates to demonstrate the probable amount of its rental loss. It also claimed that Scott Management had no loss of rental value within the meaning of the insurance contract because more than fifty of its other apartment units in Meadow Woods were vacant at all times during the period when the damaged apartment units were being repaired. The Rental Value Coverage section of the policy provides, in pertinent part:
 
 
 6
 III. Definition: For the purpose of this insurance, "Rental Value" is defined as the sum of:
 
 
 7
 A. the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured; and
 
 
 8
 B. the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and
 
 
 9
 C. the fair rental value of any portion of said property which is occupied by the Insured.
 
 
 10
 In determining Rental Value due consideration shall be given to the rental experience before the date of damage or destruction and the probable experience thereafter had no loss occurred.
 
 
 11
 (Emphasis added.) The Time Element General Conditions Section provides: "It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business ... by making use of other property at the location(s) described herein or elsewhere, such reduction shall be taken into account in arriving at the loss hereunder."
 
 
 12
 The district court held that the requirement that the insured use other property available to reduce its loss applied only to business interruption insurance and not to rental value insurance. The court reasoned that the policy definition of the term "rental value" does not reference a requirement of mitigation of loss by use of other property. However, the court overlooked the provision in the general definitions section of the policy that specifically includes rental value as a type of indirect loss that is covered under the Time Element Coverages. We conclude that the Time Element General Conditions provisions are applicable to a claim for loss of rental value.
 
 
 13
 The insured bears the burden of proving actual loss sustained. Compagnie des Bauxites de Guinee v. Insurance Co. of N. Am., 721 F.2d 109 (3d Cir.1983). To recover for loss of rental value of the apartment units while being repaired, Scott Management must show that it was prevented from receiving rent it would otherwise have received. This evidence would include historical proof of occupancy rates and proof based on prior experience of probable occupancy rates from the date of the evictions through the end of the suspension period during which the apartment units were being repaired. In addition, evidence of the vacancy of a significant number of available apartment units in the same complex that were not rented during the suspension period may be relevant to Scott Management's claim that it sustained a loss of rental value as a result of an inability to lease apartment units formerly occupied by the Culinary School students.
 
 
 14
 We vacate the award for loss of rental value and remand with instructions for the district court to allow presentation of evidence consistent with this opinion and to reconsider the amount of the claim for loss of rental value.
 
 III.
 
 15
 Commerce and Industry also claims that the district court erred in concluding that the damage to the apartment units and furnishings resulted from one occurrence rather than multiple occurrences and in applying an actual rather than theoretical time of repair standard in determining the length of time during which each apartment unit could have been repaired in the exercise of due diligence. With respect to these issues, we affirm on the reasoning of the district court.
 
 
 16
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 *
 Possession of four of the forty-five apartments leased to the Culinary School was subsequently relinquished to Scott Management. The claim made to Commerce and Industry under the insurance contract was made with respect to forty-one of the apartments; the other four apartments are not at issue in this appeal